UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK ELLIOT, RANDALL TOWE, and DANIEL TINCH, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) 1:05-cv-1891-JDT-WTL ) ) |
| DAVE ERNSTES & SONS TRUCKING, | ) ) ) |
| Defendant. | ) |

**ENTRY ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. No. 23) AND DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. No. 38).** [1]

Plaintiff truck drivers Mark Elliot, Randall Towe and Daniel Tinch ("Plaintiffs") have filed this action against Dave Ernstes & Sons Trucking ("Ernstes")[2] alleging, among other things, that Ernstes failed to pay them overtime wages as required by the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201 *et seq.*  Ernstes admits not paying Plaintiffs overtime but maintains that under the motor carrier exemption to the FLSA it does not have to. 29 U.S.C. § 213(b)(1). Section 213(b)(1) states that the overtime provision of the FLSA does not apply to "any employee with respect to whom the

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

[2] Plaintiffs have not named David E. Ernstes as a defendant. Dave Ernstes & Sons Trucking is a sole proprietorship of Mr. Ernstes, (Ernstes Aff. ¶ 2); thus, it has no legal existence separate from him. Despite this, the court will refer to the sole proprietorship, not Mr. Ernstes, as the defendant because the parties have done so in their briefs.

Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." *Id.* Plaintiffs filed a motion for partial summary judgment on their FLSA claim arguing that the motor carrier exemption did not apply; Ernstes filed its own motion for partial summary judgment arguing that it did.

## I.   BACKGROUND

Plaintiffs are suing Ernstes on numerous counts related to their employment with Ernstes as truck drivers. This motion deals only with Plaintiffs' FLSA claim. The parties agree on the basic facts of the case. The only issue to decide in this motion is for what period of time Ernstes qualifies for the motor carrier exemption to the FLSA, awarding Plaintiffs damages for the period of time it does not.

Defendant is a motor carrier based in Shelbyville, Indiana, that performs both in-state and out-of-state transportation services. (Ernstes Aff. ¶¶ 2, 6.) Ernstes has the appropriate licenses from the Department of Transportation ("DOT") and maintains its vehicles pursuant to DOT regulations. (*Id.* ¶¶ 4-5.) Plaintiffs were all employees of Ernstes some time between 2003 and 2005 and principally drove dump trucks. Elliot was employed from March 2004 to May 2005. (Pls.' Ex. E.) Tinch was employed from April 2002 to May 2004. *Id.* Towe began employment in February 2000 and according to the evidence still works for Ernstes.[3] (*Id.*)

---

[3] Plaintiffs claim they are entitled to overtime payment for weeks when they did not travel out of state. However, it is not clear exactly what periods of time Plaintiffs believe they
(continued...)

Around spring of 2003, Ernstes acquired an account with Schuster's Building Products ("Schuster's"). (Ernstes Aff. ¶ 7.) This involved picking up sand, pea gravel, and haydite[4] from various Indiana locations and taking it to Schuster's Indianapolis, Indiana location. (Towe Aff. ¶ 3; Tinch Aff. ¶ 3; Elliot Aff. ¶ 3.) The material was processed into bricks and other material. (Towe Aff. ¶ 4; Tinch Aff. ¶ 4; Elliot Aff. ¶ 4.) Both sides seem to agree that these activities do not constitute interstate travel for the purposes of the motor carrier exemption.

During this time, Ernstes continued to solicit other business. Some of the business he received included out-of-state runs for various companies hauling salt products to or from Cincinnati, Ohio and slag to Ghent, Kentucky. (Ernstes Aff. ¶ 11.) When out-of-state runs required a dump truck, David Ernstes would assign the least busy driver to the run. On occasion, a driver would ask not to be assigned and Ernstes would find someone else; sometimes a driver would refuse to go on an out-of-state run, even if there was no other work. (*Id.* at ¶ 13.) Employees who drove on Schuster's assignments, like Plaintiffs, also drove out of state several times a year. (*Id.* at ¶ 12). Ernstes claims that Elliot was the only driver less likely than another to travel out of state because Elliot got lost easily. He was sent out of state only if there was another driver going on the run for him to follow. (Ernstes Aff. ¶ 14-15.) Neither side presents

---

[3](...continued)
are entitled to overtime payment. The court will assume they claim from December 2003 until the end of 2005, which is the period of time for which they have provided time sheets.

[4] Haydite is a lightweight building material made from shale.

any evidence as to what proportion of Ernstes's business was interstate versus intrastate.

What little evidence the parties have presented is difficult to decipher. Plaintiffs have submitted a portion of their time sheets as exhibits A through C. (*See* Pls.' Exs. A-C.) For someone unfamiliar with Ernstes's business and customary notation, they are tricky to decode. Plaintiffs provide no summary or even an idea of what an observer should glean from them except their vague assertion that the "vast majority" of their time was spent on Schuster's intrastate work. (Towe Aff. ¶ 3; Tinch Aff. ¶ 3; Elliot Aff. ¶ 3.) Ernstes, on the other hand, has compiled a summary of out-of-state trips by driver. (Def.'s Ex. A, Attachment 3.) However, he has provided no records to verify his account. This might not be problematic in itself, but Ernstes's summary conflicts with the Plaintiffs' time sheets. It is far from certain which is right.[5] For the purpose of Plaintiffs' motion, it will be assumed that Ernstes's numbers are correct; for the purpose of Defendant's motion, it will be assumed that the trips mentioned in the time sheets are the only out-of-state runs. Regardless of which figures are right, it is clear that the vast

---

[5] It is not even clear that these are the complete records for each driver during the periods they cover. They appear to be compiled by truck and not by driver, and there are dates for which there is no entry. Ernstes claims that these drivers drove both semis and dump trucks (Def.'s Ex. A, Attachment 3), but all of the time sheets are for dump trucks only. Ernstes has compiled what it says is a summary of out-of-state trips, but its numbers are higher than what can be verified from the time sheets submitted. This may be because the driver drove a semi certain days instead of a dump truck, but there is no way to tell from the evidence submitted to the court. The year that Ernstes gives for the number of trips is also different. For example, Ernstes claims that Elliot made no out of state trips in 2004 and made seven in 2005. It appears from his time sheets that Elliot made around eight out of state trips in 2004 and none in 2005. (*Id.*; Pls.' Ex. A.) This may be because Defendant's fiscal year is not the same as the calendar year, but again it is impossible to say.

majority of Plaintiffs' work was done on intrastate Schuster's runs; although, each Plaintiff made multiple out-of-state trips during his employment.[6]

Both sides agree that during their employment, Plaintiffs would, from time to time, work more than forty hours a week. They were paid the same hourly rate for extra hours as for the first forty hours, not the one and half times their regular pay required by the FLSA. Both sides also agree that Ernstes qualifies for the motor carrier exemption for each Plaintiff for at least those weeks of their employment when they traveled out of state. The only issue to decide in these cross-motions is whether Ernstes qualifies for the motor carrier exemption of the FLSA for any additional period of time.[7]

---

[6] During his little over a year with the company from March 2004 to May 2005, Elliot made only around eight runs out of state. The time sheets and Ernstes's summary seem to agree. According to the time sheets, these were all done in June, July and August of 2004. At all other times, Elliot made trips for Schuster's intrastate. (Pls.' Ex. A.) Ernstes's tally is about the same, although he lists trips in 2005 rather than in 2004. (Def.'s Ex. A, Attachment 3.)

Tinch's records are provided from April 2003 to May 2004. (Pls.' Ex. B.) According to his time sheets, Tinch made about ten out-of-state runs spread from late October 2003 until early December 2003. (*Id.*) Otherwise, he made intrastate trips. According to Ernstes, Tinch made twenty out-of-state dump truck trips and twenty-eight out-of-state semi trips in 2003. (Def.'s Ex. A, Attachment 3.)

Towe's records are provided from late November 2003 to late December 2005. (Pls.' Ex. C.) According to his time sheets, Towe made about ten trips out of state in 2004 spread out from June until mid August with one in late October. (*Id.*) Towe also made trips on nineteen days in 2005, concentrated from January to February and July to August. (*Id.*) Ernstes summary claims that Towe made thirty-nine out of state semi trips in 2003, four in 2004 and none in 2005. (Def.'s Ex. A, Attachment 3.) It claims that Towe made five out-of-state dump truck runs in 2004 and thirty-nine out-of-state dump truck runs in 2005. (*Id.*)

[7] Ernstes provides an affidavit from a former employee, Richard McVey, stating the Department of Labor told McVey that he and Plaintiff Tinch were not entitled to overtime because of the motor carrier exemption. (McVey Aff. ¶ 17.) Ernstes also provides the affidavit of his lawyer, John P. Cook, who states that the Department of Labor told Cook that Ernstes was exempt. (Cook Aff. ¶ 3.) Plaintiffs object that both of these statements are hearsay not within any exception, and they are correct. These statements do not create a genuine issue of material fact and will not be considered in deciding the cross-motions. *See Miles v. Coca-Cola*

(continued...)

## II.   DISCUSSION

Whether the motor carrier exemption applies in this case is a question of law, *see Levinson v. Spector Motor Service*, 330 U.S. 649, 672 (1947), and thus a potential matter for summary judgment. Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir.1999). On cross-motions for summary judgment, each movant must individually satisfy the requirements of Rule 56, *ITT Indus. Credit Co. v. D.S. Am., Inc.*, 674 F. Supp. 1330, 1331 (N.D. Ill.1987), and the traditional rules for summary judgment apply even though both parties have moved for summary judgment. *Blum v. Fisher & Fisher*, 961 F. Supp. 1218, 1222 (N.D. Ill. 1997).

In considering this motion, the court must examine the border separating the authority of the Departments of Labor and Transportation. This tricky jurisdictional question is a product of the histories of transportation industry regulation and of the

---

[7](...continued)
*Bottling Co.*, 360 F. Supp. 869, 870-71 (E.D. Wis. 1973); Fed. R. Civ. P 56(e).

FLSA. In 1935, Congress passed the Motor Carrier Act, a safety program a key component of which was to establish the maximum hours for a driver. *See Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 48 (1943). The FLSA, passed three years later in 1938, requires that employers pay their employees time and a half for each hour worked over forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA left the program of the Motor Carrier Act intact, exempting those under the Motor Carrier Act's jurisdiction from the FLSA overtime requirement. *See* 29 U.S.C. § 213(b)(1) (referring to 49 U.S.C. § 31502).[8] "Congress evidently relied upon the Motor Carrier provisions to work out satisfactory adjustments for employees charged with the safety of operations in a business requiring fluctuating hours of employment, without the burden of additional pay for overtime." *Southland Gasoline*, 319 U.S. at 48. There can be no concurrent jurisdiction between the Department of Labor ("DOL"), responsible for enforcement of the FLSA, and the DOT, now responsible for enforcement of the Motor Carrier Act. *Levinson*, 330 U.S. at 661.

The motor carrier exemption should be read in terms of the purposes of both the FLSA and the Motor Carrier Act. *See Southland Gasoline*, 319 U.S. at 47. Because Congress intended the FLSA to give "all our able-bodied working men and women a fair

---

[8] The administrative body charged with administering the Motor Carrier Act and the statutory source of the Act's jurisdictional reach have changed over time. The Department of Transportation, created in 1966, took over administering the Motor Carrier Act from the Interstate Commerce Commission. The original source of jurisdiction for the Department of Transportation was 49 U.S.C. § 304. Section 304 was renumbered in 1983 as Section 3102 of Title 49 without substantive changes. *See* Pub. L. No. 97-449, 96 Stat. 2413. In 1994, Section 3102 was renumbered and amended as Section 31502 of Title 49. *See* Pub. L. No. 103-272, 108 Stat. 745. To avoid confusion in this entry, the body administering the Motor Carrier Act will always be referred to as the Department of Transportation even if, at the time, the Interstate Commerce Commission was still administering the program.

day's pay for a fair day's work" exemptions to it must be narrowly construed. *A. H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945); *see also Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). Defendants "bear[] the burden of proving the application of [the] exemption." *Klein v. Rush-Presbyterian-St. Luke's Medical Center*, 990 F.2d 279, 283 (7th Cir. 1993).

Yet properly understood the extent of the motor carrier exemption follows not only the negative contours of an exemption, but also the positive contours of a safety program. *See Levinson*, 330 U.S. at 676-77. The application of this program is described in 49 U.S.C. § 31502. It applies only to certain types of transportation, including transportation between states. 49 U.S.C. § 31502(a)(1) (referring to 49 U.S.C. § 13501(1)(A)). It gives the Secretary of Transportation the power to set qualifications and maximum hours of service for employees of (1) "motor carriers" and (2) "private motor carriers" "when needed to promote safety of operation." 49 U.S.C. § 31502(b). A "motor carrier" is defined as a person "providing commercial motor vehicle . . . transportation for compensation." 49 U.S.C. § 13102. The parties do not seem to dispute that Ernstes is a motor carrier; they dispute only whether Plaintiffs' duties qualify for the motor carrier exemption for every week of their employment. (Pls.' Reply Br. 2.)

There are a few cases that help elucidate the line between DOL and DOT jurisdiction when driver duties are split between intrastate and interstate travel. In *Morris v. McComb*, 322 U.S. 422 (1947), the Supreme Court vacated a Court of Appeals decision reversing a District Court's dismissal based on the motor carrier exemption and remanded the case back to the District Court. DOL sought to require

-8-

Morris to pay his employees overtime.  Morris received only 4% of its revenue from interstate commerce, *id.* at 427, and two of its drivers never even made a trip out of state, *id.* at 433.  The Court reminded DOL that "it is 'the character of the activities rather than the proportion of either the employee's time or of his activities that determines'" the jurisdiction of the DOT.  *Id.* at 431 (quoting *Levinson*, 330 U.S. at 674-675).  Thus, if each driver had driven 4% of every day interstate, DOT would certainly have jurisdiction.  The actual situation was "not distinguishable" from this.  *Id.* at 434.  The interstate trips were distributed throughout the year and each driver had a chance of being assigned to one of them.  "These trips were thus a natural, integral and apparently inseparable part of the common carrier service of the petitioner and of his drivers."  *Id.* at 433.  Every one of Morris's drivers was subject to the jurisdiction of DOT and thus subject to the FLSA exemption.

This analysis is conducted not on an enterprise level, but employee by employee.  In *Goldberg v. Faber Industries, Inc.*, 291 F.2d 232 (7th Cir. 1961), the Seventh Circuit, reversing the judgment of the District Court, found that the motor carrier exemption did not apply to all the carrier's employees.  Defendant operated ten plants to produce grease and animal products and employed twenty drivers to deliver meat scraps to the plants.  *Id.* at 234.  Each driver was assigned to a plant and a particular route; only five drivers had routes that took them out of state.  *Id.*  No driver assigned to an intrastate route ever handled an interstate one.  *Id.* The District Court determined that because the exemption applied to the five drivers who drove out of state, it must apply to all the drivers.  *Id.*  The Seventh Circuit disagreed, noting that "the test is the nature of the

transportation performed by the employees." *Id.* at 235. The fifteen drivers who only drove intrastate performed no activity which would subject them to the jurisdiction of the DOT; they were entitled to overtime pay. The court distinguished *Morris v. McComb* by explaining that even though two of Morris's drivers did not make any trips in interstate commerce, they "were subject, at any time, to be assigned to interstate trips, and that at some time during the year they would, in all likelihood, share in the carrier's interstate commerce trips." *Id.*

Together, these cases teach that being subject to interstate assignments is all that is required for DOT jurisdiction and that the employer must show that each employee meets this requirement. Both DOL and DOT have issued further interpretations of DOT's jurisdiction. DOL sets forth its interpretation of § 213(b)(1) in 29 C.F.R. § 782. DOL echoes the lessons from *Morris* and *Faber* that if a driver for a common carrier is or "is likely to be" "called upon in the course of his work to perform, either regularly or from time to time" the task of driving in interstate commerce, he will be subject to the exemption. *See* 29 C.F.R. § 782.2(b)(3). DOL also argues that some activities may be *de minimis* where they are "trivial, casual, and insignificant." *Id.* But it is unlikely that driving a truck could ever be *de minimis*. *See Turk v. Buffets, Inc.*, 940 F. Supp. 1255, 1261 (N.D. Ill. 1996). DOL also believes that when an employee is shifted from job to job, "the exemption to him in a particular workweek is tested by application of the above principles to the job or jobs in which he is employed in that workweek." 29 C.F.R. § 782.2(b)(4). In other words, the tradeoff between DOL and

DOT regulation of an employee's maximum hours might change week to week based on what job or jobs the employee was assigned to and the duties of those jobs.

DOT has issued its own interpretation of the statute. 46 Fed. Reg. 37,902 (July 23, 1981).[9] It begins with the general rule that "even a minor involvement in interstate commerce as a regular part of an employee's duties will subject that employee to the jurisidiction of [DOT]." *Id.* (compiling numerous cases). It states that the "cases establish that a driver will remain under the jurisdiction of [DOT] for as long as the driver is in a position to be called upon to drive in interstate commerce as part of the driver's regular duties." *Id.* at 37,903. How to decide whether a driver is in that position was, according to DOT, an open question. DOT proposed requiring someone claiming jurisdiction to show that the employer engaged in interstate commerce within a reasonable time of the date jurisdiction is claimed and that the driver "could reasonably have been expected to make one of the carrier's interstate runs." *Id.* If a driver engages in interstate commerce or was subject to be, he should be under DOT jurisdiction "for a four-month period from the date of proof." *Id.*[10]

---

[9] For some reason, this has never been codified in the C.F.R.

[10] DOL and DOT seem to conflict on what period of time should be analyzed, each week or a four month period. Some cases imply that DOL's interpretation should govern. *See Gerard v. Northern Transp., LLC*, 146 F. Supp. 2d 63, 67 (D. Me. 2001) (declining to follow DOT interpretation because First Circuit had applied DOL interpretation before DOT interpretation issued); *Peraro v. Chemlawn Servs. Corp.*, 692 F. Supp. 109, 144 n.4 (D. Conn. 1988) (stating without explanation that DOL's interpretation controlling). Other courts have decided that DOT has the authority to decide. *See Dole v. Circle "A" Construction, Inc.*, 738 F. Supp. 1313, 1321-22 (D. Idaho 1990) (noting that Ninth Circuit has determined that DOT's interpretation of Motor Carrier Act deserves deference). As will be shown below, it is not necessary to decide which is right to resolve the dispute in this case. Although, it appears that DOL itself applies DOT's analysis. *See Badgett v. Rent-Way, Inc.*, F. Supp. 2d 642, 657 (W.D. Penn. 2004) ("The
(continued...)

The parties disagree as to how these principles apply to them. Plaintiffs believe that 29 C.F.R. § 782.7(b)(4) mandates this court to examine Plaintiffs' time sheets and determine which weeks Plaintiffs traveled out of state, holding them to be under the jurisdiction of DOT only in those weeks and subject to FLSA in all others. Ernstes argues that it is exempt from paying overtime for the entire time in question because it solicited out-of-state business for which the Plaintiffs and all other drivers had an equal chance of being asked to drive. In the alternative, Ernstes argues that if it is liable for any overtime, the amount should be analyzed with DOT's four-month window in mind.

For their position that the court should look week by week, Plaintiffs cite *McGee v. Corporate Express*, No. 01-1245, 2003 WL 22757757 (N.D. Ill. Nov. 20, 2003). *McGee* does not persuade this court to undergo Plaintiffs' week-by-week analysis. In *McGee*, the District Court denied both defendant's and plaintiffs' motions for summary judgment. *Id.* at *1. The court did not award plaintiffs overtime pay for each week they only drove intrastate; rather, with the evidence before it, the court could not decide as a matter of law whether Plaintiffs *could have been* asked to drive interstate. *Id.* at *7. Defendant was a courier service that operated a Chicago facility; plaintiffs were former couriers in the Chicago facility. *Id.* at *1. Both sides agreed that defendant did interstate business, but many of its employees claimed they were never taken off of their intrastate routes and only some of their duties could be considered interstate for the purposes of the Act. *Id.* at *2. The court examined the DOL's interpretation of the

---

[10](...continued)
Department of Labor has accepted this 4-month rule, as set out in its Field Operation Handbook.").

motor carrier exemption and decided "the only way to determine the overtime compensation owed an employee is to look at the job duties held by the employee for each week of employment." *Id.* at *3. The court determined that plaintiff's were not entitled to overtime in the weeks they performed activities in interstate commerce.

But the court also noted DOT's interpretation of the statute, which says plaintiffs are under DOT jurisdiction if they "could have been" assigned to interstate duties. The court noted that the exemption "does not apply 'if there is no possibility of the individual driver doing interstate driving or if the possibility of interstate driving is remote." *Id.* at *6 (quoting 46 Fed. Reg. 37,902). The defendant in *McGee* contended that its supervisors randomly assigned interstate deliveries; however, the plaintiffs presented evidence that drivers were assigned to work routes on a permanent (or at least quasi-permanent) basis and that routes were reassigned only when someone did not come into work. *Id.* at *7. There was, according to the court, enough conflicting evidence on whether plaintiffs were likely to engage in interstate commerce to create a genuine issue of material fact. *Id.*

There is no such issue here. Taking the evidence in a light most favorable to them, Plaintiffs were likely to engage in interstate commerce during their entire employment. The vast majority of their time was spent traveling intrastate; however, it is not the proportion of intra to interstate travel that matters. *Morris*, 322 U.S. at 431. Ernstes engaged in interstate commerce and regularly assigned interstate jobs to dump truck drivers like Plaintiffs. Plaintiffs admit that they traveled out of state on multiple occasions. They had no set route like the *Faber* drivers, and it did not take something

out of the ordinary to be assigned to an interstate run as alleged by the *McGee* drivers. The only thing that had to happen was that Ernstes receive interstate business and one of the Plaintiffs have the least amount of work to do when it came in. For each Plaintiff, this occurred multiple times during his employment. Plaintiffs provided no reason why they were any less likely to travel out of state during a particular part of their employment. Therefore, their out-of-state trips appear to be a "a natural, integral and apparently inseparable" part of their job duties. *Id.* at 433.

Plaintiffs argue that unlike the carrier in *Morris*, Ernstes did not really assign drivers indiscriminately. David Ernstes did state in his affidavit that he would honor specific driver requests not to go out of state and that sometimes drivers would refuse to go. Plaintiff Elliot also presents a unique factual scenario compared to the other Plaintiffs because Ernstes admits that Elliot was the least likely to be assigned to interstate runs because of his "problem with directions." (Ernstes Aff. ¶ 14-15.)

These facts make no difference. The "indiscriminate assignment" formulation from *Morris* is just a shorthand way to get at the real issue—whether Plaintiffs could reasonably be expected to travel interstate as part of their duties. DOT made it clear in its interpretation that jurisdiction exists where the "driver could reasonably have been expected to make one of the carrier's interstate runs." 46 Fed. Reg. at 37,903. Any time during their employment, these drivers could have been asked to travel out of state. Ernstes solicited interstate business and each of the Plaintiffs did, in fact, take this business from time to time. Because of this, they needed to abide by all DOT

regulations. Ernstes is entitled to the motor carrier exemption to the FLSA as a matter of law and its motion will be granted.

Because the court will grant the Defendant's motion for partial summary judgment, this will leave only the Plaintiff's state law claims. The general rule in this situation is that the court should give up jurisdiction to allow the claims to be decided in state court. *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). None of the exceptions to this general rule are present in this case, *id.*, so the court will relinquish jurisdiction on all of the state law claims as well.

### III.     CONCLUSION

Because Defendant is entitled to the motor carrier exemption to the FLSA as a matter of law, its motion for partial summary judgment will be GRANTED. Plaintiffs' motion will be DENIED. The court will relinquish jurisdiction on the remaining state law claims so that they can be refiled in state court.

ALL OF WHICH IS ENTERED this 3rd day of October 2006.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge William T. Lawrence

John P. Cook
DUNN & COOK
cook.dunncook@earthlink.net

Gabriel Adam Hawkins
PRICE WAICUKAUSKI & RILEY
ghawkins@price-law.com